OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1908.

*(Continued from Volume 216.)*

## PATRICK KELLY and NELLIE KELLY, Appellants, v. HENRY BENAS and GEORGE BENAS.

### Division One, February 25, 1909.

1. **NEGLIGENCE: When Action Lies.** There must be a duty raised by the law and breached by defendant before an action for negligence lies.

2. ——: ——: **Trespassers: Volunteers.** The owner or occupant of a lot owes no duty to trespassers or volunteers going upon the lot for their own purposes, to maintain it in any particular condition for their benefit. Volunteers, bare licensees and trespassers assume the risk of injury from the condition of the premises, the owner being liable only for concealed guns, or hidden traps intentionally put out to injure them, or any form of wilful illegal force used towards them. To invitees, however, the owner or occupant owes the active duty to exercise reasonable care for their safety.

3. ——: ——: ——: **Turntable Doctrine.** On the theory that a railroad turntable, when exposed in a public place where children resort to it with the knowledge and tacit acquiescence of its owner to play on it, when left unlocked when

it might easily have been locked, is an attractive nuisance and operates as an inducement or implied invitation to them, when injured they are not treated strictly as trespassers, and recovery is allowed. That doctrine has become a fixed principle of the law, and a recovery would be permitted in other cases coming strictly within the limits of the doctrine and presenting every earmarking element upon which liability in a turntable case is predicated. But the doctrine ought not to be extended.

4. ————: ————: Child: Playing on Lumber Yard: Implied Invitation. A child nine years old, with other boys, climbed on a shed eighteen inches from defendants' loose and high-piled lumber, and engaged in flying a kite, and being warned off by a neighbor got down to the ground, and in some way, either by one of the other boys jumping upon the top-heavy pile which fell upon him while he was on the ground, or may be by the child himself climbing or jumping upon the pile, it fell, and he was killed. *Held*, that the lumber piles were not an attractive nuisance as defined in the turntable cases, that the boy was a trespasser, that defendants did not intentionally injure him, and the lumber yard not being used by children by their invitation, express or implied, as a playground, even though their watchman did not always drive children away and even though at times he was off of duty, plaintiffs cannot recover damages from the owners of the lumber yards as for negligence.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*A. R. Taylor* and *Howard Taylor* for appellants.

(1)   There was ample evidence given in favor of plaintiffs' cause of action tending to prove each material averment of the petition, and if the petition states a cause of action plaintiffs' evidence entitled them to have their cause submitted to the jury and a verdict thereon. The trial court ruled twice that plaintiffs were entitled to have the case submitted to the jury, first, on the objection to the petition as not stating a cause of action, and again at the close of the evidence for plaintiffs, and yet after the evi-

Kelly v. Benas.

dence was all in he ruled plaintiffs not entitled to recover. In doing this the trial court violated the right of jury trial as declared by this court. Rinehart v. Railroad, 204 Mo. 276; Porter v. Stock Yards Co., 111 S. W. 1137; Berry v. Railroad, 124 Mo. 244; Eckhard v. Railroad, 190 Mo. 611. (2) This action is founded upon the law applicable to injuries to children who are attracted to be or play about a place or object that is dangerous to children by reason of their immaturity of judgment and understanding when such place or object is exposed and unguarded, and where it would impress a reasonably prudent person having in charge such dangerous attraction that children would probably be attracted to be and play about the dangerous agency and be injured thereby. The doctrine is akin to the doctrine known as the humanitarian doctrine applied by the courts to adults. The attraction exposed, together with the youthful thoughtlessness and want of judgment as to dangers, overcomes the technical trespass of the child, and binds the proprietor of the dangerous agency to use ordinary care to avert dangers which he, as a reasonable man, should anticipate. In Hydraulic Works v. Orr, 83 Pa. St. 336, the court declares that to so keep a dangerous agency is actionable. In the case at bar the proof shows, or tends to show, that defendants had actual knowledge of the danger, full knowledge that children were attracted daily to be at and about the dangerous agency and liable to be killed or injured thereby. If the principle of that case is sound, it is clear this cause should be reversed and remanded. This doctrine has often been announced as the law in this State. Fink v. Mo. Furnace Co., 10 Mo. App. 61, 82 Mo. 276; Morgan v. Railroad, 159 Mo. 275; Klockenbrinck v. Railroad, 172 Mo. 687; Scullin v. Railroad, 184 Mo. 707; Reyburn v. Railroad, 187 Mo. 574; Sites v. Knott, 197 Mo. 711; Wise v. Railroad, 198 Mo. 558;

Goff v. Railroad, 199 Mo. 709; McQuade v. Railroad, 200 Mo. 158.

*Lyon & Swarts* and *Dwight D. Currie* for respondents.

(1) The petition does not state facts sufficient to constitute a cause of action. Smith v. Packing Co., 82 Mo. App. 9; Barney v. Railroad, 126 Mo. 372; Arnold v. St. Louis, 152 Mo. 173; Moran v. Car Co., 34 Mo. 641; Overholt v. Vieths, 93 Mo. 422; Gillespie v. McGowan, 100 Pa. St. 144; Rodgers v. Lees, 140 Pa. St. 484; Thompson v. Railroad, 218 Pa. St. 444; Butz v. Cavanaugh, 137 Mo. 503; Loftus v. Dehail, 133 Cal. 214; Richards v. Connell, 45 Neb. 466; Hargraves v. Deacon, 25 Mich. 1; Klix v. Nieman, 68 Wis. 271; Rattle v. Dawson, 52 N. W. 965; Benson v. Traction Co., 77 Md. 535; Vanderbeck v. Hendry, 34 N. J. L. 466; Shea v. Gurney, 47 Am. St. Rep. 446; Williams v. Railroad, 96 Mo. 275; Straub v. Soderer, 53 Mo. 43; Barney v. Cemetery Assn., 106 Mo. App. 358; Johnson v. Laundry Co., 92 S. W. 330; Friedman v. Snare & Triest Company, 70 L. R. A. 147; Smith v. Hopkins, 120 Fed. 921; Matthews v. Bonsee, 51 N. J. L. 30; Railroad v. Edwards, 32 L. R. A. 825; Clark v. Richmond, 83 Va. 355; Williamson v. Railroad, 88 S. W. 279. (2) The evidence introduced did not establish any liability upon the part of defendants and the instruction to find for them was correct. Cases cited under point 1. (3) At the time appellants' son was killed he was a trespasser upon respondents' property, and, therefore, respondents owed him no duty except to refrain from willfully injuring him. Barney v. Railroad, 126 Mo. 372; Moran v. Car Co., 134 Mo. 641; Williams v. Railroad, 96 Mo. 275; Smith v. Packing Co., 82 Mo. App. 9; Gillespie v. McGowan, 100 Pa. St. 144; Rodgers v. Lees, 140 Pa. St. 484; Thompson v. Railroad, 218 Pa. St. 444; Williamson v. Railroad, 88 S. W. 279. (4) The doctrine for which appellants

contend in the second point in their brief is founded upon the case of Hydraulic Works Company v. Orr, 83 Pa. St. 336. This case has been overruled by the court which delivered it. Gillespie v. McGowan, 100 Pa. St. 144; Rodgers v. Lees, 140 Mo. Pa. St. 484; Thompson v. Railroad, 218 Pa. St. 444. The Supreme Court of Missouri has expressly approved the doctrine laid down in Gillespie v. McGowan, which case was the first to overrule Hydraulic Works Company v. Orr. Overholt v. Vieths, 93 Mo. 429; Barney v. Railroad, 126 Mo. 390.

LAMM, P. J.—Plaintiffs (father and mother of Michael Kelly) sued for the death of Michael, an infant of tender years, laying their damages at $5,000, and grounding their action on negligence. Proof went in pro and con. At the close of the evidence the court instructed the jury that under the pleadings and evidence their verdict must be for defendants. Thereupon plaintiffs took a nonsuit with leave. Failing to get it set aside, they appeal.

## The pleadings.

The petition charges the intermarriage of plaintiffs; that their son, Michael, was the rise of nine years old on the 18th of June, 1905; that defendants were the owners, occupants and proprietors of certain premises on South Second street in the city of St. Louis and the lumber and lumber yard thereon; that said premises opened on said street and on a public alley, were unfenced and unguarded, and that children in large numbers played on the premises, all of which defendants well knew; that such open lumber yard was an attraction for children to play on said premises at and about where the lumber was piled, as defendants well knew; that children in large numbers were attracted to play at and about the piles of lumber upon said premises and were endangered, if

such lumber be negligently piled, all of which defendants well knew before Michael was killed; that defendants negligently piled lumber in their yard so loosely, insecurely and without any fastenings that said lumber fell upon Michael and injured him so that he died; that on said date defendants had piled and were maintaining a pile of lumber in said yard in such manner that long pieces of lumber and timber were laid on top of shorter pieces, to a great height; that thereby said pile was made top-heavy and liable to fall; that the pile was built without braces or cleats to secure it from falling and was without fastenings of any kind to prevent its falling; that a pile so piled was dangerous to persons near the lumber, because liable to fall and injure them; that it was especially dangerous to children attracted by said premises to be and play near said pile, as defendants well knew at all said times, notwithstanding which defendants so negligently piled and maintained said lumber pile in such dangerous and defective condition that on said date Michael was attracted to said premises to be and play thereon near said dangerous pile of lumber, when by reason of its defective condition it gave way and the lumber falling upon Michael fractured his skull and otherwise so broke his bones and crushed him that he died two days later.

The answer was a general denial and a plea of the negligence of Michael, in that he with some companions wrongfully trespassed upon the premises and carelessly and negligently caused lumber to fall upon him; and, moreover, that the injuries of Michael were caused, or directly contributed to, by the carelessness and negligence of plaintiffs in permitting their said son wrongfully to trespass upon said premises and the lumber piles.

The reply was a general denial.

## The facts.

It is agreed on all sides that defendants for many years maintained a box factory across the street from the *locus;* that they owned a lumber yard maintained on the north half of a certain lot and that they rented the premises from month to month; that at the time in hand they had several piles of lumber on this half lot; that said half lot never had been fenced in front or rear, but wagons drove through the yard directly from Second street to the alley. That plaintiffs lived in an upper apartment in a house next door to the lumber yard.

Plaintiffs put in proof tending to show that they did not allow Michael to play in the lumber yard and that whenever they found him there in disobedience to their instructions, they admonished him and brought him away; that the yard is located in a populous part of the city of St. Louis and many children lived in that region; that the pile killing the boy had been there several months and was twelve feet and upwards high, was some distance from the alley and some distance from Second street; that it had no cleats or "stick binders" and no bracing of any kind and that while short pieces were on the bottom, longer pieces were on top. They also put in evidence tending to show that children played in the yard frequently, mostly afternoons after school hours and Sundays; that the right way to pile lumber safely was to pile it with cross-binding sticks or cleats to brace the pile. Patrick Kelly testified that defendant, George Benas, told him in the presence of one Carraher and his own foreman, the next day after the accident, that he (Benas) knew boys played there and that the pile was not in good condition. Carraher also testified that he heard Benas say that the lumber was not piled right. Plaintiffs' evidence further tended to show that at about seven o'clock Sunday evening on said 18th day of

June, Michael's father was eating his supper when the boy left the room and went down stairs. In about fifteen minutes the crash of falling lumber was heard and Michael was found, under some boards that had fallen off said pile, mortally hurt. The boards were about sixteen feet long, two inches thick and twelve inches wide. Their evidence further tends to show that at the time the upper part of the pile fell off nobody was on it and that Michael was standing four or five feet from it watching another boy fly a kite, when all at once the lumber gave way and crushed him. There was evidence of a negative character put in by plaintiffs to the effect that neither the defendants nor their watchman had been seen by the witnesses testifying or heard to chase or warn boys away from the yard; that on some occasions the watchman was seen looking at boys playing there and did or said nothing.

Defendants on their part put in proof to the effect that the lumber was carefully piled; that they employed a watchman on Sundays and evenings who guarded the yard and lumber against trespassers and warned children away; that children did not play there with the consent of defendants, but, to the contrary, were constantly warned and driven away by them and their employees and by policemen; that the pile was not rickety or top-heavy; that there was a shed used by a junk dealer joining the lumber yard, about a foot from the pile, which was a little higher than the pile; that at the time of the accident there had been some boys on the roof of this shed flying a kite—Michael one of them; that they were warned off by the wife of the owner of the shed and, in jumping from the shed to the lumber pile, Michael was the last to go and the lumber fell just as he jumped. Other evidence tended to show that, in flying a kite, the boys went on a lumber pile instead of the roof of the junk dealer's shed, that Michael had been on the roof shortly before

but got down to the ground and, in climbing back on the lumber pile, the upper part fell on him. Evidence was put in contradicting the admissions testified to by Patrick Kelly and Carraher to the effect that Benas knew the lumber was not piled properly.

Such, in brief, is the case on the facts.

On such record we are of opinion plaintiffs cannot recover. This, because:

One applicable general rule of law is that there must be a duty raised by the law and breached by defendant before an action for negligence lies. Another is that the landowner or occupant owes no duty to trespassers or volunteers going upon his land for their own purpose, to maintain it in any particular condition for their benefit. [Sweeny v. Railroad, 10 Allen (Mass.) l. c. 372; Straub v. Soderer, 53 Mo. 38.] Volunteers, bare licensees and trespassers take the premises for better or for worse, as they find them, assuming the risk of injury from their condition, the owner being liable only for concealed spring guns, or other hidden traps intentionally put out to injure them, or any form of willful, illegal force used towards them. To invitees, however, he owes the active duty to exercise reasonable care for their safety.

There was always a main modification allowed to the foregoing general non-liability to persons entering without the owner's permission and that arose where he made such changes in his land so hard by a public highway as to put a traveller in danger who mistook the course of the highway and, without fault on his part, inadvertently strayed from it into the danger. [Railroad v. Harvey, 77 Ohio St. l. c. 240.]

Says CAMPBELL, J. (Hargreaves v. Deacon, 25 Mich. l. c. 5): "We have found no support for any rule which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in no way connected with business or other

relations with the occupant. . . . A person incurs no duty towards persons by not warning or driving them from his premises, and they go there, if mere volunteers, and without invitation, at their own risk."

In the same case that jurist says (referring to the application of the foregoing principles to children): "There is some danger in dealing with these questions, of confounding legal obligations with those sentiments which are independent of the law, and rest merely on grounds of feeling, or moral considerations. We feel, usually, more indignation at wrongs done to children, than at wrongs done to others. But the law has not usually given them civil remedies on any such basis. Nor does it usually, if ever, impose any duties on strangers towards them, resting entirely on the fact that they are children. Those who have any special dealings with them, as parents, teachers, and employers, incur obligations appropriate to their relations, and differing from those incurred towards others in proportion to the necessity of care and protection, and the risk of injury. But those who have no such relations with them are not liable for negligence in carrying on their own business, beyond what would be their liability to others, as well as children, who are equally free from blame."

In the Hargreaves case care was taken to express no opinion concerning cases where the nature of the business is such as to present peculiar attraction to children, beyond other kinds of occupation, nor was the writer dealing with the subject-matter of contributory negligence relating to children which is to be gauged with reference to infantile capacity. With these modifying suggestions we give approval to Judge CAMPBELL's remarks.

There is another main exception grafted on the general rule of non-liability to trespassers, volunteers or bare licensees and on that exception appellants lean

as on a staff.  It is known in the law as the doctrine of the turntable cases—a doctrine of this court (Berry v. Railroad, 214 Mo. 593; Koons v. Railroad, 65 Mo. 592; Nagel v. Railroad, 75 Mo. 653), and of many other courts of last resort.  The doctrine of those cases is, in substance, that a railroad turntable is a dangerous machine created by the act of its owner, peculiarly attractive to the childish instincts of little ones as a merry-go-round, and, if left unlocked when not in use (when it might be easily locked) and when exposed in a public place where children resort to it with the knowledge and tacit acquiescence of its owner to play on it, becomes an attractive nuisance and operates as an inducement, an implied invitation to them, and, therefore, when injured thereon they are not treated strictly as voluntary trespassers, but as toled into a hidden pitfall or trap.

There has been marked judicial eloquence and astuteness in stating the legal ground of liability in the turntable cases and no little difficulty is found in formulating sound and settled legal principles for it to rest on, but it is established in our law, and doubtless on principle ought to be applied (in those jurisdictions asserting the doctrine) to other cases coming strictly within the limits of the doctrine and presenting every ear-marking element upon which liability is predicated in the principal case.  While this is so, the manifest distress and injustice flowing from unnecessarily extending the doctrine, or loosely applying it to many conceivable cases, has caused those courts accepting it to restrict its application to the narrowest bounds.

For instance:  In this court, in Overholt v. Vieths, 93 Mo. 422, we refused to apply it in a case where a child was drowned in a pond of water in a rock quarry.

In Schmidt v. Kansas City Distilling Co., 90 Mo. 284, we applied it to a little pool of hot water on the

private premises of defendant, made by blowing off hot water, debris and steam through an escape pipe from defendant's distillery, in which pool a child was fatally scalded.

But in Barney v. Railroad, 126 Mo. 372, we doubted and refused to follow the Schmidt case and held that moving railroad cars were not within the purview of the turntable cases as dangerous and attractive machinery. In that case a child, six years old, got into a railway yard where children much frequented and catching hold of the stirrup in the foot of the ladder on a car and putting his feet against the trucks to steal a ride, he slipped off and was mangled.

In Witte v. Stifel, 126 Mo. 295, a little boy went to a building under way, three feet from the street line, and tried to draw himself up by taking hold of a loose stone placed across the top of a cellar window frame. The stone fell and killed him. It was held there could be no recovery.

In Moran v. Pullman Car Company, 134 Mo. 641, the owner of a lot was held not liable for failing to fence it. In that case there was a pond on the lot and a child was drowned while bathing in it.

In the Butz Case, 137 Mo. 503, the owner of land was held not liable for injuries to a child who voluntarily went on his private premises against the admonition of his own father and, in trying to get a piece of wire in an old quarry, used as a dumping ground, burned his feet in a smouldering fire.

And in Arnold v. St. Louis, 152 Mo. 173, a pond, lightly frozen over in the neighborhood of a public school, attractive to children of tender years for skating purposes and where children were known by defendants to resort, was allowed to exist. Two children were drowned there while skating without the permission or invitation of the owner of the lot, and recovery was denied.

In Carey v. Kansas City, 187 Mo. 715, a child lost its life by drowning. While pursuing a frog he got through a fence inclosing a public reservoir. This reservoir was located in a public park or pleasure ground of the city, and the parents were cast on the theory that when the boy fell into the reservoir he was trespassing.

In other jurisdictions applying the turntable doctrine, there is the same tendency to limit it within strict bounds, as pointed out by SUMMERS, J., in Railroad v. Harvey, 77 Oh. St. 1. c. 245. The prying mind of the student in jurisprudence may see cases in point there collated from Minnesota, Georgia, Nebraska, California, Kansas, Texas, Tennessee and Washington, to that effect. See also, authorities cited by diligent counsel in their briefs.

If the old channel of the law is to be quite changed by the application of the new doctrine automatically and without discrimination, if sentimental considerations (however elevated and tender) are to usurp the place of cold and calm reason as the foundation for rules of law, then the floodgate now damming back liability will be raised letting in strange and deep waters for the landowner to struggle with. Not only will he be liable for boys drowned while swimming in his stock pond (the idea of swimming being alluring to a boy), for those who fall into uncovered wells, cisterns and cellars (the notion of playing on the brink of such being a boyish one), for children who are suffocated while playing in piles of sand accumulated for building purposes or in sliding down stacks of straw unscientifically piled and exposed, but he may be mulcted in damages for injuries to his neighbors' children, who, romping in his haymow, without his invitation, break their bones by sliding down his hay chute, or those who, playing in his rock quarry, are hurt. Shall he fence against adventurous, trespassing boys? Almost as well suggest "that he build a wall

against birds." If he is held to liability for injury to the children of Jones because of the way he piles his lumber, by the same token, as to Brown, liability would be fastened on him for the way he piles his stones, his bricks, his corn in pens, his hay ricks and his cord wood on his private grounds—in fact, as has been pointedly said, every landowner will be liable for injuries to his neighbor's children under the new doctrine *except the neighbor himself*. We cannot well write the law that way.

Michael was a trespasser. Defendants did not intentionally injure him. They set no trap for him. Their lumber piles were not an attractive nuisance as defined in the turntable cases. Their yard was not used by children by their invitation, express or implied, as a playground, even though their watchman did not always drive children away, and though, on this Sunday evening, he was off duty for a spell. We think the court ruled correctly.

Therefore, the judgment is affirmed. All concur.