**WELLS et ux.**

v.

**HENRY W. KUHS REALTY CO.**

No. 43839.

Supreme Court of Missouri.

Division No. 1.

July 12, 1954.

J. Raymond Dyer, St. Louis, Alexander M. Goodman, St. Louis, of counsel, for plaintiffs.

R. C. Brinkman, J. C. Jaeckel, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for respondent.

VAN OSDOL, Commissioner.

This is an action to recover $15,000 for the wrongful death of plaintiffs' son. On motion the action was dismissed with prejudice on the ground that plaintiffs' amended petition did not state a claim upon which relief could be granted. Plaintiffs have appealed from the judgment of dismissal.

In plaintiff's amended petition, lengthy and repetitious, it was alleged that plaintiffs were the parents of a son eleven years of age, and that the son's death was caused by the wrongful acts, neglects and defaults of defendant as in the petition alleged.

It was alleged that on July 19, 1950, the date of the death of plaintiffs' son, defendant was the owner of certain real property in the City of St. Louis, being a tract of land some 300 by 330 feet in area, which tract is bounded on the north by Blase Avenue, on the south by Antelope Street, and on the east by Hall Street; that the east side of the tract is improved, but the rear or west part of the tract is an unimproved area; that running east and west through the tract is an open, public, dedicated alley which alley is intersected by two undedicated but publicly used easements or lanes, the more easterly of which lanes is known as "Heinen Street"; and that between the lanes and north of the public alley is an area, an "island", triangular in form, and within this area, and just north of the public alley, defendant maintained and operated a "private dump."

It was further alleged,

"5. That on July 19, 1950, the date of the hereinafter alleged fatal injury * *, and for many years prior thereto, said tract and the area around it were in a thickly populated urban neighborhood, in which a great number of children lived, including said deceased; that on said date * * * there was no public playground in that vicinity; that children of the neighborhood, including said deceased, habitually resorted to said lanes and alley, and to said western unimproved portion of said tract, for play; that defendant had knowledge of that fact and permitted said children, including said deceased, to resort thereto and play thereon; that defendant permitted and sanctioned use by certain of its tenants and others of part of said unimproved portion of its said tract, on Blase Avenue east of Heinen Street, for gardening purposes; and permitted and sanctioned people of the neighborhood, and others, to park their cars on said lanes and on other portions, indiscriminately, of said vacant portion of said tract, without let or hinderance and without any signs or other indications prohibiting or regulating the same * * *.

"6. That on July 19, 1950, * * * defendant maintained on said north 'island', above the grade and elevation of said alley, a private dump on which it knowingly permitted the dumping of debris, including broken glass bottles and broken glass jars and jugs and other non-combustible refuse, by its tenants and others, without let or hinderance and without any signs or other indications prohibiting or regulating the same; that said dump was maintained and operated by defendant immediately adjacent and next to said alley, being bounded

on its southside by said alley, on its north-east side by Heinen Street and on its west side by said other open, publicly used lane; that said dump was not operated by defendant for hire, but solely for the use and convenience of its tenants and others who might care to deposit their debris thereon; that periodically, whenever it saw fit to do so, or whenever in its opinion such disposition was needed, defendant collected and hauled off said debris it permitted and sanctioned to be deposited and to accumulate there; and that the last time it collected and hauled off said debris from its private dump, before said deceased's fatal injury, was three or four days prior thereto.

"7. That in so maintaining its said private dump, on which it permitted the placing of glass bottles and jars and jugs, broken and otherwise, by the operators of said taverns (on defendant's land fronting on Blase Avenue and Antelope Street) and others, or by whomsoever placed them there, without let or hinderance if indeed not by invitation, and for the sole purpose of convenience, as aforesaid, defendant did not engage in any justifiable economic enterprise, or have any economic justification therefor as compared to the danger and hazard to life and limb so created, broken glass being oftentimes extremely sharp and extremely pointed, particularly broken glass bottles and broken glass jars and jugs when thrown indiscriminately onto a dump, as this glass was.

"8. That on July 19, 1950, and for more than one year prior thereto, there was in effect in the State of Missouri, a lawfully enacted Constitutional provision, being that of Section 31 of Article VI of the Constitution of Missouri, [V.A.M.S.] which provides, in substance and effect, that the City of St. Louis is recognized as a City and a County and as a City has the power, rights and privileges granted it under its Charter.

"9. That on July 19, 1950, * * * there was in effect, in the City of St. Louis, a lawfully enacted Charter, which in Article I Section 25 authorized said City to 'regulate all acts, practices, conduct, business, occupations, callings, trades, uses of property, and all other things whatsoever detrimental or liable to be detrimental to the health, morals, comfort, safety, convenience or welfare of the inhabitants of the City and all nuisances and causes thereof'; and which in Article I, Section 33 authorized said City 'To do all things whatsoever expedient for promoting or maintaining the comfort, education, morals, peace, government, health, welfare, trade, commerce, or manufacture of the City or its inhabitants.'

"10. That under the authority of said Constitutional provision, and under the authority of said Charter, the City of St. Louis, on December 13, 1948, duly enacted in furtherance of the health, welfare and safety of its inhabitants, Ordinance No. 44740, which Ordinance was in full force and effect on July 19, 1950, * * * and which provided as follows: (The ordinance prohibited the deposit of any refuse on any property in the City not operated under a permit and subject to inspection as a private dump; and the ordinance provided that a permanent sign should be displayed on a private dump indicating that it was operated under a permit. The ordinance defined a private dump as "all land or parcels of land on which refuse is accepted for deposit or permitted to be deposited regardless of whether a charge is made therefor." Refuse was defined as "all waste substance including garbage as well as combustible and non-combustible wastes." Noncombustible refuse was defined as "waste substance not capable of incineration or burning, including, ashes, glass, metal, earthenware and the like." It was further provided that a violation of the ordinance was a misdemeanor punishable by fine.)

"11. That said ordinance was enacted in accordance with said Charter; that under the fair meaning of the language used therein, it was designed to prevent personal harm and injury which might be occasioned by unregulated dumping, as well as to prevent unsightly deposits of refuse material within the City Limits at places other than those sanctioned by the City authorities.

"12. That in the operation of its said private dump on said north 'island', in the rear of said vacant premises numbered 380–384 Blase Avenue, and immediately adjacent to and next said open, public, dedicated alley and said publicly used lanes, defendant flagrantly, and without any justification, economic or otherwise, violated said ordinance in that it neither applied for nor received a license for such private dump operation, as required by said ordinance; in that it permitted the dumping of broken glass and other non-combustible refuse thereon above the established grade and elevation of said dedicated alley, as prohibited by said ordinance; in that it failed to cover the same with dirt or ashes or other suitable material, as required by said ordinance; and in that it failed to display a prominent sign thereon designating the same as a 'Private Dump' and so warning people of its existence, as required by said ordinance.

"13. That as the direct and proximate result of defendant's said flagrant and unjustifiable violation of said ordinance, said deceased, while playing in said alley with two companions of about his age, at the place where it is crossed by said westernmost lane near said north 'island' on which defendant maintained its said unlicensed and unlawfully operated private dump, and while engaged with his said companions in a game of catching flying June bugs, and while in pursuit of a flying June bug, and after having unintentionally, unwittingly, inadvertently and innocently strayed and digressed from said alley and said lane a few steps onto said 'island', the distance he progressed thereon from the north boundary line of said alley having been approximately three (3) feet, was caused to slip and stumble on broken glass permitted to be deposited and maintained by defendant on its said dump as aforesaid, and there was caused to fall, and did fall, violently to the ground, breaking through a covering of weeds that defendant had permitted to grow, uncut, on its said dump, his body thereby coming into direct contact with other broken glass, being the broken glass bottles and broken glass jars and jugs defendant had

permitted to be deposited and which it maintained on its said dump as aforesaid, which contact caused said deceased to sustain and suffer severe cuts and lacerations of his lower abdomen, severing the muscles and blood vessels thereof, which directly and proximately caused said deceased to become fatally injured * * *.

"14. That at the time said deceased was fatally injured * * *, and for a long time prior thereto, and indeed from the time since they were first created, the line of demarcation between said westernmost lane and said 'island', where defendant maintained and operated its said private dump, was unmarked, indiscernible and undetectable in any way whatsoever, by sense of sight, touch, hearing, taste, or smell, said lane and said 'island' in effect, being so constituted as to blend into each other; and that on said date and for sometime prior thereto, the line of demarcation between said alley and said 'island' was similarly unmarked and obscured and similarly made indiscernible and undetectable, by reason of an overlap of dirt from said 'island', which was slightly above the grade of said alley, said dirt having been pulled from time to time onto said alley by defendant in its previous removals of trash and debris from its said private dump as aforesaid, and more dirt having washed down onto said alley from said 'island' covering said demarcation line; and likewise by reason of said demarcation line between said alley and said 'island' where defendant maintained and operated its said private dump, being obscured by weeds which defendant permitted to grow on said 'island' and on said overlapping dirt, uncut.

"15. That defendant knew that glass bottles and glass jars and jugs, broken and unbroken, were placed and deposited on its said private dump by its tenants and other people of the neighborhood and left there, not temporarily, but for long periods of time; that it was defendant's practice to remove the same, periodically, whenever it removed the trash and ashes from the individual trashpits and ashpits of its tenants located eastwardly thereof, behind the houses and commercial buildings owned and

rented out by defendant on the improved eastward portion of said Blase Avenue—Antelope Street tract; that said removals took place, in the wintertime, once every three or four weeks, but in the summertime, less often and that on those occasions, but not otherwise, defendant cleaned up its said private dump.

"16. That on July 19, 1950, there was no sign, no warning of any kind, on said 'island' where defendant maintained and operated its said private dump, nor any fence or barricade or barrier of any kind separating said dump from said alley or either of said lanes which formed its boundary, nor had there been for a long period of time theretofore, or ever.

"17. That so maintained at the place where they were, hard by and close to said alley and lanes, covered with weeds and unplacarded and unfenced as aforesaid, said broken glass bottles and broken glass jars and jugs, on which said deceased fell and was fatally injured, constituted a dangerous nuisance, hazardous to all lawful users of said tract and to all those rightfully using said alley and lanes who might unwittingly stray therefrom, and particularly hazardous to children, including said deceased, playing in said alley and lanes, or on said unimproved portion of said tract, as they and said deceased had every right to do, and were permitted to do by defendant as aforesaid.

"18. That so maintained at said place where they were said broken glass bottles and broken glass jars and jugs constituted a dangerous situation, hazardous to all lawful users of said alley and lanes, and especially to children, including said deceased, who defendant knew or should have known used said alley and lanes in their play and in their chasing games, and who might be expected to deviate therefrom in accordance with the well known tendency of children to deviate.

"19. That so maintained at said place where they were said broken glass bottles and broken glass jars and jugs constituted a highly hazardous artificial condition, dangerous to life and limb, which defendant realized or should have realized involved an unreasonable risk to persons lawfully traveling with reasonable care along said alley or lanes, who might accidentally and unknowingly stray therefrom and be brought into contact therewith, and especially to children of the neighborhood, including said deceased, whose summertime custom and practice it was, as defendant knew, or in the exercise of reasonable care could have known, since it was a custom and practice commonly engaged in by children of the neighborhood on defendant's said tract, to chase June bugs as a game and sport, and who in the course of doing so, in said alley or lanes, might unintentionally, or even intentionally, deviate therefrom and onto said unfenced, unplacarded and in every other way unsafeguarded 'island' whereon defendant maintained and operated its said unlicensed private dump.

"20. That in chasing flying June bugs in said alley – – –, and in inadvertently and unwittingly straying therefrom, while in pursuit of one of them, * * * said deceased was without fault; that his entry onto said 'island' was in no way unlawful, by reason of the fact that defendant, on that date and for many years prior thereto, permitted people of the neighborhood, including children, and including said deceased, to use said unimproved, vacant western portion of its said Blase Avenue—Antelope Street tract, without let or hinderance and without warning them to keep off, and particularly without warning said deceased to keep off, or his said parents, the plaintiffs herein, to keep him off, and had thereby caused them, and said deceased, and plaintiffs to believe that they, along with all the other people of the neighborhood, were free to use said portion of said tract, for gardening, for parking their cars, for dumping on said 'island', and for recreation and play. Said deceased's entry onto said 'island' was likewise in no way unlawful by reason of the fact that his entry thereon, to the extent of only approximately three (3) feet, as aforesaid, was innocent and not willful, and was a mere by-play, an incident, subordinate and ancillary to

his primary purpose, which was his enjoyment of said alley in his said play.

"21. That in knowingly so maintaining and operating its said dump as aforesaid, unlicensed and in flagrant violation of said ordinance, defendant breached its lawfully imposed duty to plaintiffs and their said deceased son, and in so doing and in permitting said broken glass bottles and broken glass jars and jugs to be placed there, hidden by weeds and unfenced, unplacarded and unsafeguarded in any way, so hard by and adjacent to said alley and lanes as to render the same unsafe for travel by reason of their proximity thereto and the indistinguishability of the demarcation lines of said alley and lanes where they adjoined said dump, defendant was grossly negligent, and recklessly indifferent, and guilty of censurable conduct, neglect and default indicative of wanton disregard for the rights of plaintiffs and their said deceased son, and lack of care indicative of indifference to the consequences of others. * *

"24. That since defendant's wrongful acts, neglects and defaults as regards its unlawful operation of said dump, as aforesaid, and as regards its maintenance of said broken glass bottles and broken glass jars and jugs thereon, at a place where children were accustomed to lawfully play, hard by and close to said publicly used alley and lanes, were the direct and proximate cause of said deceased's fatal injury and death, as aforesaid, said deceased, had he not died as a result of defendant's said wrongful acts, neglects and defaults, would be entitled to maintain this action and recover judgment for exemplary as well as compensatory damages against defendant.

"25. That as the direct and proximate result of defendant's said wrongful acts, neglects and defaults, and its said gross negligence and reckless and culpable conduct and wanton disregard for the safety of others, and particularly plaintiffs' said deceased son, all of which amounted to aggravating circumstances as aforesaid, plaintiffs were injured and damaged * * *."

Plaintiffs stated "that by reason of the premises they have been injured and damaged in the sum of Fifteen Thousand Dollars for which sum they pray judgment * * *."

Appellants contend the trial court erred in sustaining defendant's motion to dismiss. While appellants concede their son was not an invitee, yet they say that not in all instances is a trespasser or a bare licensee precluded from recovery against an owner of land if injury is sustained thereon. They urge there are exceptions to the general rule of nonliability of an owner of land to a trespasser or licensee. They cite the case of Boyer v. Guidicy Marble, Terrazzo & Tile Co., Mo.Sup., 246 S.W.2d 742, as a case in which exceptions to the rule are noticed. Appellants say their petition states a claim under that "main modification" of the general rule, which modification permits a recovery where the landowner makes changes in his land "so hard by" a public highway as to endanger a traveler thereon who, without fault on his part, mistakes the course of the highway and inadvertently strays from it into the danger. See language of this court in Kelly v. Benas, 217 Mo. 1, at page 9, 116 S.W. 557, at page 559, 20 L.R.A., N.S., 903. Appellants also assert that, quite apart from the "modification" as noticed in the Kelly case, their amended petition states a claim under the "dangerous substance" exception. And appellants further urge that the ordinance pleaded in their petition must be given the force and effect of statute; that the fatal injury sustained by their son was of the very character the ordinance was designed to prevent; and that their son was of the general public, the class of persons the ordinance was designed to protect. Respondent, on the other hand, stands steadfastly upon the general rule that volunteers, bare licensees and trespassers take a landowner's premises for better or for worse, as they find them, assuming the risk of injury from their condition, the owner being liable only for spring guns, or other hidden traps intentionally put out to injure them, or any form of willful, illegal force used toward them. Kelly v. Benas, supra, 217 Mo. 1, 116 S.W. 557; Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 22 L.R.A.,N.S., 1045; Porchey

v. Kelling, 353 Mo. 1034, 185 S.W.2d 820; Lentz v. Schuerman Bldg. & Realty Co., 359 Mo. 103, 220 S.W.2d 58; Walters v. Markwardt, 361 Mo. 936, 237 S.W.2d 177.

■ In determining if a petition states a claim or cause of action, the averments of the petition are to be given a liberal construction, according the averments their reasonable and fair intendment—fair implication should be indulged from the facts stated. So considered, a petition should be held sufficient if its averments invoke substantive principles of law which entitle plaintiff to relief. Page v. Joplin National Bank & Trust Co., 363 Mo. 1008, 255 S.W. 2d 821; Zuber v. Clarkson Const. Co., 363 Mo. 352, 251 S.W.2d 52; Boyer v. Guidicy Marble, Terrazzo & Tile Co., supra; Gerber v. Schutte Inv. Co., 354 Mo. 1246, 194 S.W.2d 25; Section 509.250 RSMo 1949, V.A.M.S.

■ It is the generally accepted view that a violation of a statutory duty or the violation of a municipal ordinance designed for the protection of the person claiming to have been injured by reason of the violation is negligence *per se*. Savage v. Chicago, R. I. & P. R. Co., 328 Mo. 44, 40 S.W. 2d 628; Huckleberry v. Missouri Pac. R. Co., 324 Mo. 1025, 26 S.W.2d 980; Butz v. Cavanaugh, 137 Mo. 503, 38 S.W. 1104; Gillespie v. Terminal R. Ass'n of St. Louis, Mo.App., 204 S.W.2d 598; 65 C.J.S., Negligence, § 19, at pages 417–421; 132 A.L.R. 871. And an injured party may institute an action at common law for negligence, and set up and prove a violation of a statute or ordinance as constituting a negligent act on the part of defendant. Jelly v. Pieper, 44 Mo.App. 380; Lenz v. Seibert, Mo.App., 259 S.W. 829; Gillespie v. Terminal R. Ass'n of St. Louis, supra. But, although, according to the averments of the amended petition, the defendant's private dump was maintained in violation of ordinance, and because of this defendant's maintenance of its dump may have been negligence *per se* or as a matter of law, this does not necessarily mean that defendant was liable for such negligence to plaintiffs for the death of their son who, under the facts as pleaded, did not pass over onto defendant's land as an invitee.

■ The Ordinance (No. 44740) as alleged does not contain any provision giving a right of recovery to plaintiffs for its violation (compare Lynch v. Missouri-Kansas-Texas R. Co., 333 Mo. 89, 61 S.W.2d 918). It is penal and not remedial. It provides for no civil liability as between defendant and third persons. The ordinance does not purport to extend or modify the common-law rule of the nonliability of landowner to trespassers or bare licensees. Consequently, it would seem the duty of defendant to plaintiffs' son, considering the action as at common law upon conduct made negligent by ordinance, should be determined in accordance with the common law governing the relationship of plaintiffs' son and defendant. And, if so, defendant's conduct (even though made negligent by ordinance) was *actionable* negligence as to those persons who were rightfully on defendant's premises (or as to those who came within an exception to the general rule of nonliability of landowners to trespassers or bare licensees). Butz v. Cavanaugh, supra; State to Use of Potter v. Longeley, 161 Md. 563, 158 A. 6; 27 Harvard Law Review 333. (There is a radically different kind of municipal ordinance requiring private persons to perform public duties. One who fails to obey such an ordinance incurs a liability to the public authorities, but to them alone. The most common example of an ordinance of this kind is one requiring abutting owners to keep adjacent sidewalks clear of snow and ice. See now Russell v. Sincoe Realty Co., 293 Mo. 428, 240 S.W. 147, cited by defendant-respondent.)

■ Now defendant must have known of the propensity of children to wander in play. And it has been stated that "A possessor of land abutting upon a public highway is subject to liability for bodily harm caused to young children by an excavation or other artificial condition maintained by him thereon so close to the highway that it involves an unreasonable risk to such children because of their tendency to deviate from the highway." Restatement, Torts

§ 369. While, as this court said in Witte v. Stifel, 126 Mo. 295, 28 S.W. 891, 892, it is well-settled law that where no duty is owed there is no liability, yet "there is another rule of law equally as well settled; that is, that he who owns property must so use it as not to unnecessarily injure others." A duty to exercise care may be a duty imposed by common law under the circumstances of a given case. In the Witte case the only question was—were defendants guilty of negligence in leaving the loose, "unmortared" stone in the condition it was in (up over a window in the unfinished wall facing the street), so near the public street in the city, under the circumstances shown in evidence, and if so, were defendants liable in an action for the death of the deceased child, who in that case was at most a mere intruder, occasioned by such negligence. In the Witte case it was held that plaintiff could not recover. In that case no evidence was introduced showing defendants knew of the dangerous condition, or knew that children were in the habit of resorting to the unfinished building for play.

In our case, accepting the averments of the petition as true, defendant was maintaining a dump on which it permitted the placing of glass bottles, jars and jugs, "broken and otherwise." Aside from the ordinance such refuse could be reasonably considered as dangerous. The dump was in close proximity to a public alley passing through defendant's tract in a thickly populated urban area. Children of the neighborhood habitually resorted to the public alley and to other lanes on defendant's tract of land, and to the western unimproved portion of defendant's land, for play. Of this defendant had knowledge. There was no sign signaling the presence of the dump containing the broken glass with which plaintiffs' son came in contact and upon which his body was impaled. And the margin or demarcation between the alley and the adjacent "island" was obscured by dirt and debris washed down by the elements and pulled down by defendant from time to time in previous removals of trash and debris from its dump which, as alleged, was close to the public alley across defendant's land; and the margin was further obscured by weeds which defendant had permitted to grow, uncut. Here plaintiffs' son while engaged in play inadvertently strayed a few steps onto the "island" and was caused to slip and fall, his body coming into contact with broken glass on defendant's dump.

In these circumstances as pleaded we do not say, as a matter of law, that defendant should not be held responsible. It seems to us that facts may develop within the purview of the averments of the amended petition from which a jury could reasonably find that defendant should have realized there was a likelihood that some person, especially a child, in passing along the alley might inadvertently pass over onto defendant's land and dump, and become injured.

The judgment of dismissal should be reversed and the cause remanded.

It is so ordered.

LOZIER and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.