Charles **WINEGARDNER** and **Hazel Winegardner, Appellants,**

v.

**CITY OF ST. LOUIS, a Municipal Corporation, Respondent.**

No. 48263.

Supreme Court of Missouri,

Division No. 1.

April 10, 1961.

Edmund W. Albright, and William L. Mason, Jr., St. Louis, for appellants.

Thomas J. Neenan, City Counselor, Alvin J. McFarland, Associate City Counselor, St. Louis, for respondent.

COIL, Commissioner.

Mr. and Mrs. Charles Winegardner sought $25,000 damages for the alleged wrongful death of their 16-year-old son, Richard. On defendant's motion their action was dismissed with prejudice on the ground that the petition did not state a claim upon which relief could be granted. Plaintiffs appealed from the judgment of dismissal and contend that the trial court erred in so ruling for the reason that the petition states facts invoking relief under the so-called "hard-by" rule.

The pertinent averments of the petition were: that defendant owned or possessed and controlled land in St. Louis County near the intersection of Strodtman and Columbia Bottom Road; that on such land was an abandoned quarry about 200 x 100 feet in area which was, on August 26, 1959, and for a long time prior had been, filled with water to a depth of 25 feet; that defendant knew or in the exercise of ordinary care should have known that on August 26, 1959, and for a long time prior thereto, children frequently swam in the quarry; that defendant knew or in the exercise of ordinary care should have known that the quarry containing deep water was dangerous for such use by children; that defendant negligently failed to drain the quarry, failed to advise children not to go in the water, failed to attempt to prevent children from going in the water, failed to provide lifeguards, and negligently permitted the existence of an "inviting" open road or path from the public roads to the quarry; and that the quarry and water in it as maintained by defendant constituted a dangerous nuisance. The petition averred also that "On said 26th day of August, 1959, said Richard Dean Winegardner went to the said quarry, went into the said water, and then and there met his death by drowning in said water."

While plaintiffs' petition specifically averred that defendant maintained a dangerous nuisance, plaintiffs do not seek to sustain their action on that ground; nor do they contend that the petition stated a claim under the attractive nuisance doctrine.

Plaintiffs' sole contention as stated in their brief is that the averments of their petition were sufficient to invoke "the rule of law that a possessor of land abutting upon a public highway is subject to liability

for bodily harm caused to young children by an excavation or other artificial condition maintained by him thereon so close to the highway that it involves an unreasonable risk to such children because of their tendency to deviate from the highway."

It is our view that for the reasons hereinafter stated plaintiffs' petition affirmatively alleged facts which excluded the application of that rule.

Plaintiffs' whole reliance casewise is upon Wells v. Henry W. Kuhs Realty Co., Mo., 269 S.W.2d 761, 47 A.L.R.2d 1038. There, the petition averred, inter alia, that defendant maintained a dangerous dump in close proximity to a public alley in a thickly populated urban area; that defendant knew that children habitually played in that alley; that there was no sign indicating the presence of the dump or broken glass on it, and the demarcation between the alley and the adjacent land was obscured by weeds and other conditions; that plaintiffs' son, while playing in the public alley, inadvertently strayed a few steps onto defendant's land and was caused to slip and fall, his body coming into contact with the broken glass on the dump, and that he sustained injuries which resulted in his death. In that case, the court said: "In these circumstances as pleaded we do not say, as a matter of law, that defendant should not be held responsible. It seems to us that facts may develop within the purview of the averments of the amended petition from which a jury could reasonably find that defendant should have realized there was a likelihood that some person, especially a child, in passing along the alley might inadvertently pass over onto defendant's land and dump, and become injured." 269 S.W.2d 768.

In that same case, at 269 S.W.2d 767, we quoted with approval section 369, page 1001, Restatement, Torts: "A possessor of land abutting upon a public highway is subject to liability for bodily harm caused to young children by an excavation or other artificial condition maintained by him thereon so close to the highway that it involves an unreasonable risk to such children because of their tendency to deviate from the highway."

It will be noted that the Kuhs case dealt with a fact situation involving an 11-year-old boy who "inadvertently" deviated from a public way. In the later case of Patterson v. Gibson, Mo., 287 S.W.2d 853, the court, in distinguishing the Kuhs case, described it as one illustrating "the so-called 'hard-by' rule, i. e., the maintaining of an artificial and hazardous condition so close by a public way that a traveler, who *inadvertently deviates,* may be injured." 287 S.W.2d 856.

It may well be that the Kuhs case, supra, should not be construed as necessarily confining the application of the principle of section 369 of the Restatement, supra, to an "inadvertent deviation" by a child; it may well embrace, under given fact situations, intentional deviations. " * * * the law recognizes that there are many ordinary and expectable incidents of travel along the highways that may involve technical, sometimes even intentional, trespass on neighboring lands. Children, for instance, must be expected to play as they go along the road and this may include straying from the road, or touching fences and adjacent buildings with a stick, so that it may be negligence to leave an exposed electric wire inside the recess of a doorway letting onto the sidewalk, even though the wire is entirely within defendant's property." Harper & James, The Law of Torts, Vol. 2, § 27.4, p. 1446. See also Prosser on Torts, 2d Ed., § 75, p. 429.

However that may be, we point out that comment C to § 369, p. 1001, Restatement, Torts, is in part: "The rule stated in this Section is incapable of any more definite statement. Both in determining the area of expectable deviation and the character

of the conditions, the maintenance of which makes the possessor subject to liability, account is to be taken of the public interest in not unduly restricting the possessor's legitimate use of his land. Therefore, the rule stated in this Section does not require the possessor of even unfenced land to use care to make the whole area of it safe for children roaming at large thereon. *The area of expectable deviation may be described as including only that portion of the land which is immediately contiguous to the highway.*" (Our italics.)

It seems apparent that whatever may be the exact limits of the so-called "hard-by" rule as it may be applied by the courts in this state in various fact situations, it does not apply to a child traveler on a public road who departs from the road, travels a path on private property a certain distance to a quarry, and thereafter determines to enter the water in that quarry.

Assuming that plaintiffs' decedent was a "child" for the purposes of the rule, the averments of plaintiffs' petition leave no doubt that he departed from the public road, walked on a path leading from that road to a quarry, and thereafter intentionally entered the water in the quarry and was drowned. Under those circumstances it is clear that the quarry did not constitute an artificial condition so close to the highway that it involved an unreasonable risk to plaintiffs' decedent because of his natural tendency to deviate.

The judgment is affirmed.

HOLMAN, C., concurs.

HOUSER, C., concurs in separate memorandum.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.