# E. F. MORRISON, et al., Appellants, v. PHELPS STONE COMPANY, Respondent.

Kansas City Court of Appeals. January 5, 1920.

1. **NEGLIGENCE: Turntable Cases: Rock Quarry: Small Cars: Children.** The rule in turntable cases held applicable to an instance where small push cars used at a rock quarry were left standing on a track unfastened and unlocked, so that a boy ten years old, with other boys, were attracted to them to play and coasted down a a twenty per cent grade to a rock crusher, and becoming frightened jumped off and was killed.

2. ———: **Rule Not Restricted to Turntables.** The rule of liability in turntable cases is not restricted in application to cases of turntables, but is applicable to any other dangerous agency calculated to attract young children to play upon, or with them.

3. ———: **Rule Not Applicable: Dangerous Agency: Attractive.** The rule in turntable cases will not be used to deprive one of the use of his property because it is dangerous and unsafe for those who

may, uninvited, come upon his premises. But if the dangerous agency is attractive to children and it is practicable, with reasonable effort and ordinary care, to make it safe against them using it as a play thing, it is actionable negligence not to do so.

Appeal from Jackson Circuit Court.—*Hon. Thos. B. Buckner,* Judge.

REVERSED AND REMANDED.

*H. G. Pope, Wm. G. Holt* and *J. K. Cubbison* for appellants.

*Lathrop, Morrow, Fox & Moore* for respondent.

ELLISON, P. J.—This action was instituted by the parents of a boy ten years old who was injured (afterwards dying) by being run over by one of defendant's small cars riding thereon. The defendant, a stone quarry corporation, demurred to the petition on the ground that it failed to state a cause of action. The demurrer was sustained by the trial court. Plaintiffs stood on the petition, whereupon judgment was rendered against them and they appealed.

It was alleged in the petition that defendant operated a stone quarry on one side of a hill and used in its operation a number of small cars weighing 1000 pounds, three and a half feet wide, four and one-half feet long with a bed thereon three and a half feet deep. That these cars were used on a track with iron rails for the purpose of carrying rock from one portion of the quarry on one side of the hill to a rock crusher on the other side. That from the rock to the top of the hill was a distance of between two and three hundred feet slightly up grade. That from the top of the hill to the crusher, a distance of between one hundred and fifty and two hundred feet, there was a sharp down grade of twenty per cent.

It is further alleged that for many months prior to the day plaintiff's son was injured, children with defendant's knowledge, were daily attracted to these

cars and played on them by coasting down the hill to the rock crusher at the bottom.

That on the 12th of June, 1916, plaintiffs' son, went with a number of other boys to this quarry and finding a car at the quarry side of the hill, neither blocked nor locked, they pushed it up the slight grade to the top of the hill when they got upon it and started coasting down to the rock crusher. That while the car was thus running, it became unmanageable, plaintiffs' son became frightened and jumped from the car which ran over one of his legs and he died in a few days.

It will be readily seen that this action is based on a rule annuonced in what has come to be known as the "turntable cases," That is to say, a railroad company is liable for an injury where it leaves a turntable unguarded and unfastened in an exposed place, even on its own ground, where it attracts children to play.

The Judges of many courts, while enforcing the rule, have found themselves in such antipathy to it as to lead them into expressions which other Judges feel are not justified by the reason upon which the rule is based. It is said that the rule ought not to be called an innovation, for, "The common law, does not permit the owner of private grounds to keep thereon allurements to the natural instincts of human or animal kind, without taking reasonable precautions to insure the safety of such as may be thereby attracted to his premises. To maintain upon one's property enticements to the ignorant or unwary, tantamount to an invitation to visit, and to inspect and enjoy; and in such cases the obligation to endeavor to protect from the dangers of the seductive instrument or place follows as justly as though the invitation had been express." [Price v. Water Co., 58 Kansas, 551, 554.]" "The doctrine of the cases is, that the child cannot be regarded as a voluntary trespasser because he is induced to come upon the turntable by the defendant's own conduct. What an express invitation would be to an adult, the temptation of an attractive plaything is to a child of

tender years." [City of Pekin v. McMahon, 154 Ill. l. c. 150; Keefe v. Railroad, 21 Minn. 207; the latter quoted approvingly by our Supreme Court in Berry v. Railroad, 214 Mo. l. c. 607.]

To knowingly attract a child to a dangerous place where you konw, or ought to know, he will play and probably get hurt, ought to be considered, as above intimated, to be no less than to invite him there. [Wilmes v. Railroad, 175 Iowa, 101, 108.] It may be, and has been, likened to enticing an animal on your premises and then injuring it. In Capp v. St. Louis, 251 Mo. 345, 365, Judge WOODSON, in citing the foregoing cases quotes approvingly fro mThompson on Negligence that "It would be a barbarous rule of law that would make the owner of land liable for setting a trap thereon, baited with meat, so that his neighbor's dog, attracted by his natural instincts, might run in to it and be killed; and which would exempt him from liability for the consequences of leaving exposed and unguarded on his land a dangerous machine, so that his neighbor's child, attracted to it and tempted to intermeddle with it by instincts equally strong, might thereby be killed or maimed for life."

It has been said in several instances by the Supreme Court of this State that the rule ought to be restricted to those cases which fall within its reason, but that the appliction of the rule would by no means be confined to turntables. [Capp v. St. Louis, 251 Mo. l. c. 367, 372; Kelly v. Benas, 217 Mo. l. c. 11.]

Among the cases in which it is held that the rule ought not to be extended, is the latest from the Supreme Court. [Buddy v. Unoin Terminal Railway, 207 S. W. 821.] That case is greatly relied upon by defendant to sustain the judgment that the petition failed to state a cause of action. The nuisance claimed in that case was a standard gauge railroad flat car about twenty feet long. The defendant there was engaged in building an extension of its track on its right of way in St. Joseph about 150 feet from a school which, the plaintiff, a boy

ten years old, attended. The defendant used the car and others in this work, and while not in use, they stood unblocked for two or three months. The school boys, including plaintiff, ranging in age from 10 to 13 years, frequently played with these cars by pushing them up and down the track, when finally a car was run against plaintiff and he was severly injured. It does not appear that the railroad company knew of the boys so using the cars. The Supreme Court held that the attractive nuisance, or turntable rule did not apply. In doing so, Judge FARIS, who wrote the opinion, clearly showed his dislike of the rule and that he considered it unsupported by legal principles, and for that reason should not be extended, but he recognized its existence as a firmly established part of the law of the State. He states, in terms, that the doctrine "has been accepted in this State" and is "well settled law." So, therefore, we must recognize the rule and ascertain if the facts of this case fall under it. In doing so we must, of course give heed to the facts in cases which have been held not to be within the rule, and we cannot find a better one, on the facts for defendant than this Buddy case so much relied upon by counsel.

In that case, as we have said, the cars were ordinary guage flat cars used on steam railroads, and the court said (p. 825.) that "No case has been called to our attention wherein this doctrine has been applied to cars whereof the motive power was, as here, steam or even electricity. In other words, such cars, instead of being regarded as attractive nuisances when standing upon railroad tracks, have uniformly been held not to fall in that category." But different facts make up the case before us. Here the cars were different type, the difference tending strongly to attract children in that they were so small as to suggest to them that they could be easily handled and be made play things for boys. Pushing was the power to move them. The place where they were used by defendant was adapted to the service of boys in play, or on the lookout for amuse-

ment, and they could have been made safe with slight effort by defendant; it is of course recognized that one may not be deprived of the use of his property because it is dangerous and unsafe for those who may uninvited, come upon his premises. But the dangerous agency is attractive to children and it be practicable, with reasonable effort and ordinary care, to make it safe against them using it as a play thing, it is negligence not to do so for which liability should exist.

A recent case in California (Cahill v. Stone Co., 153 California 571) is commented upon by our Supreme Court in the Buddy case and is distinguished in its facts. The Supreme court refuses to disapprove it, but points out the difference in the two cases. In the Cahill case the car was a "push car" but of a size and kind as to be used in the construction of a railroad and was loaded with heavy railroad rails, while in the Buddy case the car was a flat car twenty feet long drawn as are in steam railroads. In both cases the car was being used in constructing the track, the only appreciable difference being the power used to operate them and perhaps in the size. If that difference was sufficient to cause the court in the Buddy case to say it could be "fairly distinguished" from the Cahill case, for many fold stronger reason must it be distinguished from the one before us. The car in the Buddy case while said to be light for its kind was a ponderous thing as compared with the car (about three and a half feet spuare) which figures in this case—so small in dimension as to suggest to the ordinary ten year old boy a thing to be played with.

We are embarrassed in consideration of this case by the fact that some of the Judges of our Supreme court have condemned the propriety of the rule involved while others have praised it, but *all* have said it is a part of our law to be enforced in all instances where the facts leave room for its application.

The foregoing considerations lead us to reverse the judgment and remand the cause for trial. All concur.