AMOS HOLIFIELD and BLANCHE HOLIFIELD, Appellants, v. JULIUS WIGDOR and WIGDOR FURNITURE COMPANY, a Corporation, Respondents, No. 41841—235 S. W. (2d) 564.

Division One, January 8, 1951.

J. Grant Frye for appellants.

*Marshall Craig* and *Bailey & Craig* for respondents.

[565] ASCHEMEYER, C.—This is a suit to recover damages in the amount of $15,000.00 for the alleged wrongful death of plaintiffs' son, a child approximately five years of age. There was a verdict for the defendants and plaintiffs have appealed.

Plaintiffs' son was drowned on January 27, 1949, in a water-filled exacavation located on residential property in Charleston, Missouri, owned by Jesse N. Scott and his wife. The Scotts, along with the Semo Gas Company, were originally joined as defendants but plaintiffs dismissed as to these defendants prior to trial and proceeded against the Wigdor Furniture Company and Julius Wigdor, the respondents on this appeal.

In January, 1949, the Scotts purchased from the Wigdor Furniture Company, through Julius Wigdor, a gas furnace to be installed in their residence. The respondents were to install the gas heating system, including a 500 gallon underground gas tank which was to be located adjacent to the residence, but the Semo Gas Company was supervising and checking the installation. After the furnace and two small gas tanks were installed, a hole was dug for the large tank on January 22, 1949. There was a good deal of rainfall after the hole was dug and by January 27, 1949, the hole was "brimful of water." On the latter date, sometime after 4:00 P. M., appellants' (plaintiffs') son entered the water-filled excavation (in some manner not disclosed by the evidence) and was drowned.

Appellants base their right to recover upon the attractive nuisance doctrine. Their theory of the case, as pleaded and submitted by an instruction, was that the installation of the two small gas tanks next to the Scott residence, the water-filled excavation for the large gas tank, and the large tank situated adjacent to the excavation "created an inherently dangerous condition to children of the age of such deceased child" because the tanks were bright and shiny and could be easily seen from the adjacent street and "that the tanks, their appearance, their location, the fresh · dirt, the water in the hole, and the area in and [566] about such hole became naturally attractive to such deceased child."

Appellants assign error in the giving of various instructions on behalf of respondents. Respondents contend such instructions were properly given but argue that any error therein is immaterial since appellants failed to prove a submissible case and are not entitled to recover. This was the view of the trial court expressed, as follows, in a memorandum opinion filed at the time appellants' motion for a new trial was overruled: "This court is still of the opinion that there was insufficient evidence in the whole case to make a submissible case and if there is any error in the instructions, it is harmless error because the verdict and judgment are for the proper parties."

Did appellants make a submissible case? Respondents offered no evidence. Appellants' evidence, in addition to facts already stated, showed: The Scott residence was on the west side of South Main Street in Charleston, Missouri. The house faced east and was a short distance north of Ashby Street, an unpaved, east-west intersecting street. Main Street was paved and was much traveled. There were paved sidewalks on both sides of Main Street, north of Ashby Street. Appellants lived on the east side of Main Street about one block south of the Scott residence. This was a residential neighborhood and many children lived in the immediate vicinity.

The two small gas tanks were installed close to the south side of the Scott residence. They were 3½ feet high; 10 inches in diameter; were painted with aluminum paint; and were silvery in color, except for a black cap. The hole for the large tank was 8 or 10 feet south of the residence. It was 5 feet wide, 8 feet long and about 6 feet deep. Earth was piled around three sides of it. The east end of the hole was about 64 feet west of the sidewalk in front of the Scott home. The large gas tank was delivered in the late afternoon of January 26. It was placed approximately 5 feet east of the hole. This tank was also aluminum in color. It was 7 feet long, 5 feet high and 4½ feet wide. The tanks were plainly visible from the sidewalk.

The hole was dug on Saturday, January 22. Mr. Wigdor was on the premises on the following Monday and Tuesday. The rainy weather delayed the installation of the tank. There was no fence or barricade placed around the hole.

It was cloudy and rainy on January 27 but when the deceased child left his home about 4:00 P. M. to go out to play, the sun was shining. The child was missed about 4:30 P. M. Other children looked for him without avail. Later, Mr. Holifield and some neighbors began to search. The child was found submersed after 8 o'clock that evening. A wooden toy was floating on the water and a stick with which the child played was found near one end of the hole.

Mrs. Scott had been working on her back porch most of the afternoon. She had a view of the side yard and the hole and large tank. She did not see the child and at no time had she or her son noticed any children playing on the south side of the house near the tanks and the excavation. When the weather was seasonable, children played croquet in the front yard of their home.

Mr. Holifield stated that the tanks were bright and shiny and on the day following the accident he noticed the sun shining on them, although he had never noticed them prior to the time his son was drowned.

There has been a diversity of opinion among the courts of various states concerning the recognition and the scope of the attractive

nuisance doctrine. 38 Am. Jur. Sec. 142, p. 802; 65 C. J. S. Sec. 29(1), p. 457. In Missouri, the doctrine has been given only limited application. Hull v. Gillioz, 344 Mo. 1227, 130 S. W. 2d 623, 627. While it has not been restricted to "turntable cases", it has been held that "the 'attractive nuisance' doctrine will not be extended beyond the so-called 'turntable' cases wherein it had its inception in this country." Howard v. St. Joseph Transmission Co., 316 Mo. 317, 326, 289 S. W. 597, 601. See also 49 A. L. R. 1034; State ex rel. Kansas City Light & Power Co. v. Trimble, 315 Mo. 32, 285 S. W. 455; State ex rel. W. E. Callahan Const. Co. v. Hughes, 348 Mo. 1209, 159 S. W. 2d 251, 253. This does not [567] mean that only a turntable could be an attractive nuisance, but it does mean that the doctrine will not be extended beyond the principle of such cases. Hull v. Gillioz, supra.

The subject was discussed thoroughly in Hull v. Gillioz, supra, where we concluded that the Missouri decisions limit the doctrine to those cases where children are caused to trespass because of the attraction of an instrumentality or condition which is inherently dangerous. Thus, children must be attracted to the place of injury by the very instrumentality or condition whose inherent danger produces the injury. If the danger is not inherent but arises from casual negligence, the doctrine is not applicable and there is no liability.

If we assume that the deceased child was attracted to the Scott property by the bright and shiny tanks, the water-filled hole and the fresh earth around the hole, as appellants argue, the evidence fails to show that such conditions were inherently dangerous and thus constituted a dangerous and attractive nuisance. We have refused to apply the doctrine of attractive nuisance to ponds in cases where the evidence showed that children habitually played around them (Overholt v. Vieths, 93 Mo. 422, 6 S. W. 74; Moran v. Pullman Palace Car Co., 134 Mo. 641, 36 S. W. 659; Arnold v. City of St. Louis, 152 Mo. 173, 53 S. W. 900, 902; Rallo v. Heman Const. Co., 291 Mo. 221, 236 S. W. 632) and these cases, quite evidently, have been decided upon the principle that a pond, whether natural or artificially created, is not inherently dangerous. We have refused to apply the doctrine to a building in course of construction (Witte v. Stifel, 126 Mo. 295, 28 S. W. 891); to a pile of lumber [Kelly v. Benas, 217 Mo. 1, 116 S. W. 557, 20 L. R. A. (N. S.) 903]; and to a pile of railroad ties (Emery v. Thompson, 347 Mo. 494, 148 S. W. 2d 479, 480) although, in the latter two cases, the attraction to children was amply demonstrated by the evidence. In Emery v. Thompson, supra, we said (l. c. 480): "So, in the case at bar, the appellants' deceased child went upon respondent's right of way and played among the piles of ties without in-

vitation, but with the knowledge of respondent; he, therefore, a bare licensee, took the premises for better or for worse, and assumed the risk of injury from their condition. It cannot be said that he had an implied invitation under the attractive nuisance doctrine because we have already found that a pile of ties may be attractive to small children, *but are not inherently dangerous."* (Emphasis supplied.)

We hold that the conditions of which appellants complain were not inherently dangerous and did not constitute an attractive nuisance so as to justify the application of the attractive nuisance doctrine. This conclusion is fortified by Lentz v. Schuerman Bldg. & Realty Co., 359 Mo. 103, 220 S. W. 2d 58, 60, in which we held that a temporary condition "cannot come within the classification of nuisance." There is no contention in the instant case that the tanks, without more, were dangerous. If danger existed, it resulted from the water-filled excavation. While the hole was dug five days before the accident, completion of the work was delayed because of rainy weather and the delay in delivery of the large tank which did not arrive at the Scott premises until approximately twenty-four hours before the accident. Although the evidence shows that there was rainfall on every day, except one, from January 22 through January 27, 1949, there was no evidence indicating when the hole became filled with water. Under these circumstances, the water-filled hole was a temporary condition which "cannot come within the classification of nuisance." At most, the failure to place a fence or barricade around the hole "was no more than 'mere casual negligence', and not evidence sufficient to establish that defendant *maintained* an attractive nuisance." State ex rel. W. E. Callahan Const. Co. v. Hughes, supra, (l. c. 254); Hull v. Gillioz, supra.

What we have said is decisive of the case and it is not necessary for us to discuss the additional issues as to whether (1) respondents could be liable under the attractive nuisance doctrine when they were not in exclusive possession or control of the Scott premises and (2) whether the [**568**] deceased child was actually attracted to the premises by the conditions of which appellants complain. On the latter issue, it may be observed that the evidence failed to show that the deceased child, or any other children, had ever played around the tanks or the excavation. Certainly, there was no showing that either the tanks or the excavation possessed any special or peculiar attraction for children. The things which stimulate the curiosity and spirit of adventure of children are beyond enumeration. As Judge Lamm was once moved to comment: "Shall he fence against adventurous, trespassing boys? Almost as well suggest 'that he build a wall against birds'." Kelly v. Benas, supra, (l. c. 560).

The judgment should be and it is hereby affirmed. *Van Osdol* and *Lozier*, CC., concur.

PER CURIAM:—The foregoing opinion by ASCHEMEYER, C., is adopted as the opinion of the court. All the judges concur.