Gerald L. PATTERSON, Jr., an Infant, by his Next Friend, Gerald L. Patterson, Sr., Appellant,

v.

Roy Lee GIBSON, d/b/a Gibson Construction Co., Respondent.

No. 44863.

Supreme Court of Missouri.
Division No. 2.

March 12, 1956.

Gragg & Aubuchon, William R. Schneider, St. Louis, for plaintiff-appellant.

Evans & Dixon, John F. Evans, St. Louis, for respondent.

EAGER, Presiding Judge.

This is a suit by a minor for personal injuries. The amount sought in the petition was $20,000 and, concededly, the plaintiff suffered serious injury. The trial court directed a verdict for the defendant, and subsequently overruled plaintiff's motion for a new trial.

The child in question, then a boy four and a half or five years of age, lived with his parents in a second-floor apartment or flat in the City of St. Louis, directly across an alley from a corner lot on which a church building was being constructed at the time of the injury. The excavation had been made, the concrete foundation poured and completed, and the joists and

rough flooring had been laid for the first or ground floor. In making the excavation, the earth was dug out for a distance of 3–4 feet outside the completed foundation wall, in order to facilitate the removal of the forms for the concrete, the weatherproofing of the foundation, and the laying of drains and plumbing; this additional excavation was described at the trial as an "over-dig." The result was that there was a trench substantially all around the foundation, three feet or more wide and estimated to be 10 to 12 feet deep. There were at least two sand piles on the lot, one of which was near the northwest corner (plaintiff lived just west of the lot). Apparently, the usual bits and pieces of lumber, wood, and building materials were scattered about the place, including some pieces in the trench and some on the rough flooring already constructed. The neighborhood children had played on and about the construction and the lot since the work started; there was testimony that at times they played there during working hours and that the workmen had not disturbed or warned them; also, that there were no warning or "no trespassing" signs, until such were put up shortly after the injury. There was evidence also that substantially all phases of the construction and materials were visible from the adjoining streets and alley, as well as from plaintiff's home.

Dirt from the "over-dig" remained scattered around the edges of the trench, but this level was lower than that of the rough flooring. At the time of the injury two boards were lying across this trench at the northwest corner; they have been variously, and somewhat hazily, described both as to dimensions and position. However, as best we can ascertain, they were probably one inch thick, ten or twelve inches wide and perhaps ten feet long. One was on top of the other but "overlapping"; how much it "overlapped" no one said. These boards were used for a "bridge" for wheelbarrows from the ground to the structure; there was evidence that they had been there four or five days or more, or about a week; a neighbor woman testified that she had removed them "maybe two weeks" before the injury (with little or no explanation), but, if so, they were evidently replaced shortly. Witnesses displayed the "overlapping" at the trial with pieces of cardboard, which is of little help here. There was some testimony that the boards had been "overlapping" for about a week, or for four or five days prior to the injury; and the neighbor woman said that when she saw them one-half to three-quarters of an hour after the injury they were overlapping, and in the same position as when she removed them.

On April 7, 1954, in this situation and surroundings, the child had been playing in the sand pile near the northwest corner of the lot, which incidentally was furthest away from the street intersection. This was about 5:45 P.M. and the weather was clear. For some reason, and on his own initiative, he left the sand pile and walked on to this board bridge leading to the flooring. Two older boys watching him (one twelve and one fifteen) testified that as he neared the flooring the upper board "tipped over" or "tipped to the side," and he fell and the board (as he fell) came back into its original position. All of the construction work in question and the materials and supplies around it were on private property. The evidence indicates no undue delay in the construction work; in fact, the fall and injury, according to one witness, occurred three or four days after the foundation forms had been removed.

No point is made concerning the pleadings, so we shall not discuss them. Defendant does make the point that the evidence wholly failed to show that he owned or controlled the premises in question or was responsible for the conditions shown. There is some substance in this point, but since the omission appears to have been an inadvertence we might be inclined to remand the case if such were the ground of reversal. Under these circumstances, we proceed to consider the liability on the merits.

Plaintiff makes two points: (a) that defendant knowingly maintained an "enticing and an inherently dangerous trap for small

children"; and, (b) that defendant knowingly maintained "an attractive nuisance of an enticing and inherently dangerous and trap-like nature." We shall consider these in reverse order. The doctrine of attractive nuisance has long been recognized in Missouri, but its application has been rather strictly limited. These cases often promote a conflict between "sentimental considerations" and the "cold and calm reason * * * for rules of law". Judge Lamm in Kelly v. Benas, 217 Mo. 1, 116 S.W. 557, 560, 20 L.R.A.,N.S., 903. Of the cases plaintiff cites on this point those most nearly applicable are: Hull v. Gillioz, 344 Mo. 1227, 130 S.W.2d 623; Lentz v. Schuerman Bldg. & Realty Co., Banc, 359 Mo. 103, 220 S.W.2d 58; Holifield v. Wigdor, 361 Mo. 636, 235 S.W.2d 564; and Morrison v. Phelps Stone Co., 203 Mo.App. 142, 219 S.W. 393. The cases of Zuber v. Clarkson Const. Co., 363 Mo. 352, 251 S.W.2d 52; Wells v. Henry W. Kuhs Realty Co., Mo., 269 S.W.2d 761, and Kemp v. Doe Run Lead Co., Mo.App., 57 S.W.2d 758, are also cited, although they are not strictly attractive nuisance cases.

The case of Hull v. Gillioz, supra, contains a rather exhaustive discussion of the doctrine as applied in Missouri. There sundry steel "I" beams, each approximately 43 feet long and weighing more than 3,000 pounds, had been piled in a construction storage lot, which was unfenced, and with one end of the pile about seven feet from the public sidewalk. There was no watchman and many neighborhood children had habitually played in the lot, on the pile of beams, and on other materials piled there. A number of these beams had been removed from the center of the pile, and one was left in such an insecure position on the pile that children could and did rock it back and forth, making loud clanging noises. This had gone on for a comparatively long period and there was some evidence that an employee of defendant had been told of the condition. While plaintiff and three other children were thus engaged in rocking the beam, it fell, seriously injuring him. The court reviewed the history of the doctrine, in Missouri and elsewhere, and noted that its application in Missouri is rather limited; various instances are recited where its application has been denied. The court there held that the doctrine is applicable where (a) children's trespasses are due to the attractions of a dangerous instrumentality or condition, and (b) where, (and only where) the instrumentalities and conditions are *inherently dangerous,* and not such as are created by mere casual negligence. The Missouri doctrine was there described as a middle ground, lying between the strict application of the early turntable cases and the liberal expressions of the Restatement of Torts, § 339 (which has not been followed). The court further said at 130 S.W.2d loc. cit. 628: " * * * Inherently dangerous means that danger inheres in the instrumentality or condition itself, at all times, so as to require special precautions to be taken with regard to it to prevent injury; instead of danger arising from mere casual or collateral negligence of others with respect to it under particular circumstances. * * *." It was held that the conditions there met these requirements; the decision was based largely on the fact that the children could, by their own efforts, put these enormous beams in motion, and this was thought to be strictly analogous to a "turntable."

The application of the doctrine has been denied by the Missouri courts in the following instances: ponds or unguarded waters; lumber piles; iron pipes; a building under construction; standing railroad cars; climbing a pole so as to contact electric wires; children burned in smoldering fires; a pile of railroad ties; and lightly frozen ice on ponds. To this effect see the cases cited in Hull v. Gillioz at 130 S.W.2d loc. cit. 627, in Kelly v. Benas, 217 Mo. 1, 116 S.W. 557, 560, and in Holifield v. Wigdor, 361 Mo. 636, 235 S.W.2d loc. cit. 567. The building construction case of Witte v. Stifel, 126 Mo. 295, 28 S.W. 891, is worthy of note; there a seven year old boy pulled down upon himself a loose slab of rock weighing 600 pounds which had been laid across a basement window opening; the window was within three or four feet of the sidewalk and the building was under construction. The application of the doctrine was denied.

In the case of Lentz v. Schuerman Bldg. & Realty Co., Banc, 359 Mo. 103, 220 S.W. 2d 58, cited by plaintiff, the application of the doctrine was denied where a child was burned in a smoldering fire left by construction workmen; the leaving of the fire was said to constitute only casual negligence, at most. That case confirms the definition and limitations of the doctrine as expressed in Hull v. Gillioz, supra. In Holifield v. Wigdor, 1951, 361 Mo. 636, 235 S.W.2d 564, a five year old boy drowned in an excavation made for the installation of a gas tank; rain water had filled the hole in a period of several days. The theory of the plaintiff-parents was that the shiny, silvery tanks nearby were attractive to children and that all these things, as a whole, created an inherently dangerous condition. Recovery was denied and the court there reaffirmed the principles already discussed, specifically held that this was not an inherently dangerous condition, and also held that a temporary condition could not constitute a nuisance, but at most was an instance of casual negligence. The case of Zuber v. Clarkson Const. Co., 363 Mo. 352, 251 S.W.2d 52, did not involve children and is not an attractive nuisance case; it will be discussed under the next point. The facts in the case of Morrison v. Phelps Stone Co., 203 Mo.App. 142, 219 S.W. 393, distinguish it from the present case, as will be apparent to the reader. The recent case of Wells v. Henry W. Kuhs Realty Co., Mo., 269 S.W.2d 761, involved an entirely different legal principle. There a boy, chasing a June bug in an alley, inadvertently *strayed* or deviated over the obscured boundary between the alley and the adjacent property; he was not attracted to that property by any condition, equipment or structure upon it; in fact, it was used for an allegedly unauthorized dump, and he fell, severely cutting himself on broken glass obscured by weeds or otherwise. The case illustrates the so-called "hard-by" rule, i. e., the maintaining of an artificial and hazardous condition so close by a public way that a traveler, who *inadvertently deviates*, may be injured.

We conclude that the Missouri authorities do not justify the application of the attractive nuisance doctrine to this situation. No doubt children were attracted to the scene of construction generally; it is most doubtful that the board bridge, in and of itself, was the source of attraction or the cause of the trespass. That fact alone would be sufficient ground for denying the application of the doctrine. We do not, however, consider this "bridge" of boards as an inherently dangerous instrumentality. It had been used frequently by others, both workmen and children, for at least several days, and had caused no previous injury. Moreover, the condition was a temporary arrangement at most, and not a "nuisance" more or less permanently maintained. It also seems to us highly speculative to assert that these boards remained in precisely the same over-lapped condition for days while workmen were running wheelbarrows over them, even though there was some evidence to that effect; however, that is not the basis of our decision. If the condition was negligently created, it resulted from casual negligence, within the doctrine of the Missouri cases. If any further support is needed, aside from the Missouri authorities, the reader is referred to a full annotation on the subject of liability for injuries to children at building projects appearing in 44 A.L.R.2d at pages 1253 et seq.

The other contention of plaintiff is that defendant thus maintained "an enticing and an inherently dangerous trap for small children." It is difficult, actually, to perceive the distinction between this theory and the attractive nuisance theory, since the "maintaining," and the "inherently dangerous" feature are again relied on, and "enticing" is substituted for the element of attraction. What we have already said largely disposes of this contention. We do not consider these boards as an inherently dangerous instrumentality; also, they, and their condition, were visible to anyone and not hidden.

The child in this case was either a trespasser or a licensee; in the latter ca-

pacity persons are often referred to as "bare licensees." Giving plaintiff the benefit of the doubt, we will so consider him, in view of the fact that children had apparently been playing on the premises while work was going on, and without being told to leave. The Missouri law as to licensees has been reviewed very recently by this court en banc in the case of Anderson v. Cinnamon, Mo., 282 S.W.2d 445, 448; there the court said, quoting in part from another case: " 'the only duty of the owner is that he must not willfully or wantonly injure him, or knowingly let him go into a hidden peril, or otherwise, by an affirmative negligent act, injure him after his presence is or should be discovered in a position of danger. He owes him no affirmative duty of care to protect him.' We think the explosive material cases are a good example of what is meant by letting one go into hidden peril and some of them are set out in the footnotes to 45 C.J. 796 which we cited in connection with that statement. See also 65 C.J.S., Negligence, § 38, p. 504; Boyer v. Guidicy Marble, Terrazzo & Tile Co., Mo.Sup., 246 S.W.2d 742 and cases cited concerning duty as to explosives. Thus it is unusual hazard that requires warning to licensees. Harmful chemicals, explosives and other inherently dangerous materials developed by modern science and industry, no doubt, would be within this rule at least under circumstances where licensees could not be expected to know of their presence or effect." See also: Twine v. Norris Grain Co., Mo.App., 226 S.W.2d 415; Porchey v. Kelling, 353 Mo. 1034, 185 S.W.2d 820; Stevenson v. Kansas City So. Ry., 348 Mo. 1216, 159 S.W.2d 260. Missouri has not adopted the broad rule of liability to licensees expressed in § 342 of the Restatement of Torts, as expressly pointed out in the Anderson opinion, supra. And that opinion sufficiently distinguishes, for our purposes, the case of Boyer v. Guidicy Marble, Terrazzo & Tile Co., Mo., 246 S.W. 2d 742. There the boy in question picked up one or more dynamite caps which were lying around in a "thrown away" condition.

Beyond question, such was an inherently dangerous substance. Explosives are perhaps the best illustration of that class. The case of Zuber v. Clarkson Const. Co., 363 Mo. 352, 251 S.W.2d 52, cited by plaintiff, was an action for wrongful death; defendant, engaged in levee work, had continuously left some immense earth-moving machines in a public area, unlocked, in gear, with the brakes off, and ready to move upon experimentation by curious persons. The evidence showed that for some time people had been starting the machines and moving them around. The deceased was run over by one of them while he and another were experimenting with it. In any event these machines were inherently dangerous instrumentalities when in improper hands. We do not think that situation is at all analogous to the present one. The opinion there merely held that the petition stated a cause of action.

Little need be said of plaintiff's other citations; the case of Leonard v. Rosenthal-Sloan Millinery Co., Mo.App., 7 S.W.2d 429, involved active negligence, and the plaintiff was held to be an invitee. The three cases cited from other states involved wholly different facts.

If we should hold that there is liability in the present situation, then there would also seem to be a corresponding liability where loose boards were left across the rafters or joists in any uncompleted building frequented at times by curious children, and in countless similar situations. That can hardly be the law. Some hazards are presented in substantially all construction work,—to the workmen, and to those who may intrude upon the premises. The Missouri law has certainly not, as yet, extended thus far the liability of a property owner (or user) to a bare licensee.

We feel that the trial court properly directed a verdict for the defendant, and the judgment is affirmed.

All concur.