John William PAISLEY, a Minor, by his Next Friend, J. David Paisley, and J. David Paisley and Susan Paisley, Respondents,

v.

J. M. LIEBOWITS, d/b/a Liebowits Realty & Construction Co., Appellant.

No. 47396.

Supreme Court of Missouri,

En Banc.

June 12, 1961.

Bernard A. Barken, St. Louis, for appellant.

Rexford H. Caruthers, St. Louis, David L. Crossen, Clayton, Martin Schiff, Jr., St. Louis, for respondents.

LEEDY, Presiding Judge.

John William Paisley, an infant, has recovered judgment against J. M. Liebowits, d/b/a Liebowits Realty & Construction Company, for $7,500 for personal injuries (burns) allegedly resulting from defendant's negligence, which judgment also awarded the father, J. David Paisley, $3,121.60 for necessary medical and hospital expenses. Liebowits (hereinafter referred to as defendant) has appealed, contending that no submissible case was made, and, alternatively, that plaintiff's instruction No. 1 was reversibly erroneous.

■ The notice of appeal having been filed prior to January 1, 1960, appellate jurisdiction is in this court notwithstanding the fact that the "amount in dispute" is below the (current minimum) limit of this court's monetary jurisdiction under Laws 1959, S.B. No. 7, V.A.M.S. § 477.040.

Originally, there were several other defendants, but since the case has been disposed of as to them, and they are not involved in any of the questions presented on this appeal, they will not be further noticed.

Defendant is a building contractor who, on June 2, 1954, was engaged in constructing apartments on a vacant lot owned by him in the 5400 block on Cabanne Avenue in St. Louis. In the late afternoon of that day, the infant plaintiff, then 7 years old, came upon the premises and was playing around a trash fire, or the "smolderings" or remains thereof, when, as the jury found, the combustible substance in a nearby can came in contact with the fire, and it ignited, and he was burned. Plaintiff's theory of recovery was that his injuries proximately resulted from defendant's negligence in keeping a dangerous substance (oleum spirits) on his premises where it was accessible to children of tender years, and likely to cause them harm or injury. Countering, defendant contends no case was made for the jury for these reasons: That plaintiff was a trespasser, or at most a bare licensee, to whom he owed no duty of affirmative care; that oleum spirits is not a dangerous substance within the doctrine of the cases imposing liability where dynamite caps and other extremely dangerous explosives were the offending substances; that there was no showing that oleum spirits was involved in the occurrence by any direct evidence or any legitimate inference; and that even assuming oleum spirits was on defendant's premises, there was no substantial evidence that this substance or any conduct on the part of defendant was the direct and proximate cause of plaintiff's injuries.

From photographs the apartment project (which was in an advanced stage of construction—defendant says 75 to 80% completed) appears to have consisted of a one-story structure built in the form of a "U" with individual entrances opening onto a court in the fashion of a motel layout. It was in close proximity to the apartment house in which the Paisleys lived. From the time they had moved there (1941) until construction started, the lot (the only vacant one in the vicinity) had been used as a children's playground, a garden area and a picnic area for the people living in the neighborhood. After construction started, neighborhood children continued to play in and around the premises every day, especially after school, of which defendant had constructive, if not actual, knowledge.

Defendant likewise had actual or constructive knowledge that fires were started on the premises for the purpose of burning trash or waste materials created by the construction, which fires were permitted to "burn out." One witness testified there were remnants of such fires practically every evening when the workmen left. The defendant himself had seen small blackened and charred areas where fires had been on the premises. He had given no instructions as to burning trash or rubbish (whether to, or not to) for the reason, as testified by him, that the practice was to have accumulated trash carried off by truck. There was a "Keep Out" sign located somewhat in the rear of the court, 103 feet back from the sidewalk, or 53 feet back from the front line of the building. Although children continued to play on the premises after construction started, the child had been warned by his parents to stay away. The painting contractor used a room in the new structure as a "shop" where all the mixing of paint and cleaning or washing of brushes was confined. He testified oleum spirits was used each day (in the 15 minute interval before the painters left the premises for the day) to clean the brushes. It is a paint thinner, a clear liquid, and comes in 5-gallon square cans with a small screw lid or cap. There were different cans of it located in the building. Paint brushes were not cleaned in the original 5-gallon cans, but for this purpose the thinner was poured into an open top 5-gallon can, or into a smaller container. The painting contractor knew the substance was inflammable and would flare up if poured on a fire. He did not remember seeing a smoldering fire in the yard of the apartment building on the date in question, but stated he might have and not remembered it. He had frequently noticed that there was debris in front of the building, and he had previously seen fires there.

No one actually saw the occurrence, and the only direct evidence of it came into the record in the way indicated by these excerpts from the transcript:

"Mr. Caruthers: I am going to read a statement which was entered into by counsel as to what John William Paisley would testify to were he put on the stand here.

"Mr. Carter: It is understood it is not a stipulation of fact, but it is a statement that is what the boy's testimony is * * *.

"Mr. Caruthers: He would testify as follows [apparently reading from the transcript where Mr. Carter, defendant's counsel, had previously read said statement, or some of it]: 'He came home from school and found his mother wasn't there and went next door. And there was the remains of a fire, he believes there was some sand, where the fire had been, and he saw a can that had some liquid in it, that had sort of a greenish color. That he took a stick and stuck the end of the stick into the fire. He got some of the greenish liquid on his jeans. In the movement around there, he accidentally knocked over this can and some of that liquid spilled onto the place where the fire had been, or where there was still something hot and it started to flare up. He put a piece of tar paper * * *. [Mr. Carter: Then there was a discussion off of the record, and I said:] But Mr. Crossen has mentioned three points that I didn't incorporate in the statement of what the boy said. That when he moved and knocked over the can, he spilled some of it on the leg of his jeans, and also that he put tar paper over the fire to stamp it out, and that he did not specifically go into detail as to how much sand was on the fire, or whether there were any flames. Mr. Crossen also said at one stage of the game, when he first got some of the liquid on his pants, he decided to go upstairs and change his pants; that he kicked the can over when he was on his way upstairs.' Mr. Carter, I believe that has not been corrected."

A neighbor heard plaintiff's "terrible screams" shortly after he had left her premises, and she rushed from her apartment to assist him. When she reached the corner of the apartment she found "there was a bright flame covering the lower part

of his body, reaching almost to the waist, or right close to it * * * his blue jeans were in bright flames." A passing delivery-man assisted this neighbor in removing the boy's clothing. He then went over to where the fire was and undertook to put it out. He picked up a gallon can that appeared to have water in it and threw it on the fire, and the fire blazed up 8, 10 or possibly 12 feet. He did not throw all of the liquid into the fire. The fire was some 30 to 50 feet from the sidewalk.

The child's father inspected the premises on the evening of the day in question, using a flashlight. He saw a charred area with "junk and everything piled up around there, one place where the burning appeared to be." Near that area he picked up a gallon can which was about one-eighth full of liquid. The can contained a thick green dark paint substance, and on top of that was floating about 2 or 3 inches of a liquid solvent that appeared to be paint thinner. It smelled like naphthalene or paint thinner. The can conformed to the size of the one described by the boy, and although there may have been a dozen assorted cans lying around, this one was the only one "at the spot [charred area]." He returned to the lot the next morning and removed the same gallon can (which he positively identified) to his apartment, and subsequently to his office, where he made tests of the contents, describing them thus: "I put it on a stick and lit it to see if it would burn. I took the can to my office and tested it once again, and it still flared up, and by the odor of it I saw it was explosive and of an inflammable nature." It burned readily.

Plaintiff's expert witness, a chemist, testified that oleum spirits is a volatile type liquid vapors of which will burn and will flash when thoroughly vaporized, and explode if confined; that it is somewhere between gasoline and kerosene in volatility; that its flash point is rated at 70 degrees Fahrenheit by a reference book recognized as standard throughout the chemical industry.

Defendant was interrogated at length concerning the presence of flammable substances on the premises, the details of which need not be repeated, it being sufficient to say that after enumerating several such substances used by the various crafts on the job, he excluded the possibility of any of them except oleum spirits as the one that could have been involved in plaintiff's injury.

■ Defendant invokes the doctrine of nonliability for injuries to trespassers or licensees under the rule that a property owner has no duty to such persons to use reasonable care to keep his land in reasonably safe condition for them, and no duty to carry on his activities so as not to endanger them. Such is undoubtedly the general rule. Boyer v. Guidicy Marble, Terrazzo & Tile Co., Mo., 246 S.W.2d 742, 745, and cases cited. That case thus points out exceptions to such general rule: "[One] usually stated as part of the rule, is that the landowner may not willfully or wantonly injure the trespasser or licensee. Kelly v. Benas, 217 Mo. 1, 9, 116 S.W. 557, 559, 20 L.R.A., N.S., 903; Ford v. Rock Hill Quarries Co., 341 Mo. 1064, 1070, 111 S.W.2d 173, 175 [2–4]. There are other exceptions to the general rule. Among these are factual situations which call for the application of the 'attractive nuisance' doctrine. Hull v. Gillioz, supra [344 Mo. 1227, 130 S.W.2d 623]. Those situations which call for the duty of lookout on the part of railway employees as to trespassers or licensees using a pathway long and habitually used. Ahnefeld v. Wabash R. Co., 212 Mo. 280, 300, 111 S.W. 95, 99. And fact situations wherein it may be said that some affirmative negligence inflicted injury upon a licensee or trespasser present upon an habitually used pathway. Porchey v. Kelling, 353 Mo. 1034, 1041, 185 S.W.2d 820, 823[5, 6], and cases there cited.

"There is another exception to this general rule which is recognized in this state. This, that one who is under the duty to exercise the care in using, maintaining, and

handling extremely dangerous explosives which a reasonably careful person would exercise under the same or similar circumstances, owes a duty especially to children and those of immature judgment, irrespective of the fact that the status of the person may be that of trespasser or licensee. In Kansas City ex rel. Barlow v. Robinson, 322 Mo. 1050, 1059, 17 S.W.2d 977, 981[6], 32 S.W.2d 1075, this court en banc held that it was negligence to leave exposed and unguarded in an accessible place, explosives which may be found by trespassing children. In Diehl v. A. P. Green Fire Brick Co., 299 Mo. 641, 655, 253 S.W. 984, 988[2, 3], we recognized that unexploded dynamite caps are 'extremely dangerous agencies. They are easily exploded and most deadly in their effect when exploded.' It was held there that it was for the jury to say whether a reasonably prudent and careful man would throw away unexploded dynamite caps at a place where children might find them. In Kennedy v. Independent Quarry and Const. Co., 316 Mo. 782, 790, 291 S.W. 475, 477[3], we recognized the general rule that one having highly dangerous explosives in his control must exercise care commensurate with the circumstances. See also: Gerber v. Kansas City, 304 Mo. 157, 174, 263 S.W. 432, 436.

■ "This recognition of a landowner's liability to a trespasser is not an extension of the 'attractive nuisance' doctrine. It may involve some of the basic considerations which prompted the 'attractive nuisance' doctrine, but it is, nevertheless, a rule independent of the 'attractive nuisance' doctrine. Alligator Co. v. Dutton, 8 Cir., 109 F.2d 900, 903[1, 2]; Holifield v. Wigdor, supra [361 Mo. 636, 235 S.W.2d 564]."

Plaintiff does not seek recovery under the attractive nuisance doctrine but contends that the facts (which are strikingly analogous) bring the case squarely within the orbit of Alligator Co. v. Dutton, supra, on which he confidently relies. In that case a 9-year-old boy was burned when inflammable waste material which had been left accessible to the boy and other children (who habitually played on a vacant lot adjacent to defendant's premises) came in contact with an open fire the children had built. The waste material was the residue of some of the defendant's raincoat cloth processing (a secret fluid) together with the "cleaning drainage" of naphtha and naphtha-soaked rags with which the processing tanks had been cleaned. It looked like an ordinary heavy dark oil, but was in fact highly combustible, a semi-explosive, having a flash point of 95 degrees Fahrenheit, a percussion rate of 1300, and burned steadily at 113 degrees. Only 8 per cent of the fluid was paraffin naphtha-benzene. The explosive contents of the material were strong enough, should a tomato can of it come into contact with fire, to throw the can 10 to 15 feet in the air. The children had procured a tomato can of the material from a 5-gallon bucket which defendant left unwatched on the vacant lot on which the children played, or on the company's contiguous property, where it was readily available. Liability was upheld. This was arrived at in the absence of Missouri cases dealing specifically with the care required for safeguarding substances of the type there involved by applying general law. Cases in this jurisdiction generally seem not to have dealt with other than highly explosive or inherently dangerous substances, such as dynamite caps, and this under the attractive nuisance doctrine; but for cases from other jurisdictions involving injuries to children resulting from the ignition of explosive or volatile liquids, see Annotation, 10 A.L.R.2d 22, loc. cit. 163 et seq.

■ The critical question, then, becomes this: Whether the nature of the offending substance here involved, oleum spirits, rendered it sufficiently dangerous as to bring the case within the dangerous substances exception to the rule of nonliability to trespassers and licensees, particularly as exemplified in the Alligator case. We hold that question must be answered in the affirmative. Comparison of the qualities of the substances in the two cases discloses they

are so closely similar and akin as to be practically indistinguishable, the principal differences seeming to be that here we do not have evidence of percussion rate, although the proof shows that oleum spirits "will explode if confined," and here the flash point (70 degrees Fahrenheit) is a full 25 degrees lower (and hence in that respect more dangerous) than in Alligator.

Much stress is laid on Lentz v. Schuerman Building & Realty Co., 359 Mo. 103, 220 S.W.2d 58. While it is true that recovery was there denied for the death of a 3-year-old child who wandered onto the defendant's premises and received fatal burns from a fire to burn waste materials on the residential construction job (it being held that defendant was not liable on the grounds of nuisance or negligence), the opinion was careful to point out that burning of the waste materials on defendant's own property was a very different thing from leaving or abandoning explosive or semi-explosive substances which did not appear to be dangerous in places accessible to and frequented by children, and cited in that very connection the Alligator case, supra, and others. We think the Lentz case not controlling under the facts of this record, nor are Anderson v. Cinnamon, 365 Mo. 304, 282 S.W.2d 445, 55 A.L.R.2d 516, and Smith v. Jacob Dold Packing Co., 82 Mo.App. 9, also relied on.

 We have no difficulty in concluding that the facts hereinabove enumerated (which need not be repeated here) are amply sufficient to support an inference not only that oleum spirits was the offending substance, but also that the same, being dangerous, was kept on the premises by defendant as an incident and arising out of the construction project where it was accessible to children of tender age. In this situation, the question of whether such conduct constituted negligence, and if so, whether such negligence was the proximate cause of plaintiff's injuries, was properly for the jury.

 The only other point is that based on the failure of plaintiff's recovery instruction to require a finding negating plaintiff's contributory negligence, a pleaded issue, which, as defendant charges, was supported by the evidence. But defendant did not submit that issue, so that, under the decision of the court en banc in Shepard v. Harris, Mo., 329 S.W.2d 1, 7, he thereby abandoned the same, and it was no longer an issue in the case for any purpose, and consequently plaintiff's verdict-directing instruction which ignored such abandoned issue of contributory negligence was not erroneous.

The judgment should be, and it is, affirmed.

PER CURIAM.

The foregoing opinion by LEEDY, P. J., is adopted as the opinion of the Court en banc.

All concur.